UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

___

Laurine Meinhardt,

        Plaintiff,

           **PLAINTIFF'S RESPONSIVE MEMORANDUM TO DEFENDANT'S MOTION TO DISMISS**

v.

World's Foremost Bank,

        Defendant.

___

    Plaintiff Laurine Meinhardt, by and through her attorney Nathan K. McLean Esq., 1158 Randolph Avenue, Saint Paul, MN 55105, for her Complaint against Defendant states and alleges as follows:

## **INTRODUCTION**

    In its Motion to Dismiss, Defendant's position is that no set of facts exists that, if true, would warrant a judgment in Plaintiff's favor. Specifically, Defendant asserts that it has complied with all facets of the Fair Credit Billing Act ("FCBA") and must therefore have its Motion granted. This is patently untrue. As will be demonstrated in this responsive memorandum, the FCBA requires Defendant to make relevant billing *corrections* when the law

warrants. In the case before us, if the material facts of the complaint are taken as true, Defendant should have credited Plaintiff's account according to the law. Defendant has failed to do so, in violation of the law. Therefore, Defendant's position that it has complied with the FCBA in every respect is erroneous if the facts in Plaintiff's complaint are taken as true. As a result, a Motion to Dismiss is improper in this case, and should be denied.

## STATEMENT OF THE ISSUES

1. The FCBA requires more from a creditor than simply requiring the creditor to provide a written explanation of its position within 30 days of an obligor's written notice of a billing error. It requires the creditor to correct the billing error if one exists. Has Plaintiff stated a claim upon which relief can be granted?

2. Was Plaintiff's reliance on Wisconsin consumer statutes in plain error?

## BACKGROUND

Plaintiff's predecessor in interest ("Mr. Naef") entered into a contractual agreement with Defendant World's Foremost Bank, a subsidiary of Cabela's, Inc., provider of retail sporting goods in several states. The contractual agreement between Plaintiff's predecessor in interest and Defendant was an agreement for Defendant to provide credit card services to Mr. Naef in exchange for certain duties to be performed by Mr. Naef, including payment of interest and timely minimum monthly payments on any unsecured credit Mr. Naef obtained using the credit card issued by Defendant.

On September 15th, 2008, Mr. Naef was approached by a vendor from SEC. This vendor was selling tools from her truck, and approached Mr. Naef at his place of employment in Wausau, WI. The vendor represented to Mr. Naef that the tools she was selling had a value of

over $14,000.00. She also stated she would sell the goods at a deeply discounted price of $4,150. Mr. Naef then placed an order for all of the tools with the vendor using his Cabela's Visa with World's Foremost Bank. That same day, the tools were transferred to Mr. Naef's possession at the point of sale. He then transfered them to his home where they still sit, unused and unopened.

The following day, Mr. Naef compared prices at various stores and found that the tools did not have a value of over $14,000 but were instead selling for prices comparable to what he had purchased them for.

As a result of the vendor's dishonesty and misrepresentation, Mr. Naef decided not to purchase the tools from the vendor and immediately contacted the merchant, SEC, by telephone and informed them as such after first making a good faith effort to resolve the situation satisfactorily. When he was unable to do so, Mr. Naef stated that he was revoking any acceptance that may have taken place and that he wished for the goods to be picked up by the merchant. Specifically, Mr. Naef mailed his notice of cancellation to the address on the bill of sale on September 19th, 2008, pursuant to Wisconsin Statute 423.202 (2).

SEC refused to pick up the goods unless Mr. Naef paid a 20% restocking fee totaling $830, which he refused to do because Wisconsin law holds that a refund of the entire purchase price must be given if notice of cancellation is provided in a statutorily satisfactory manner.

Mr. Naef informed SEC of where the goods were and also attempted to make arrangements for them to be picked up, but SEC was uncooperative and consistently refused to do so. Furthermore, SEC refused to credit Defendant the amount which had been paid on behalf of Mr. Naef.

Mr. Naef promptly informed Defendant by telephone of the fact that he did not accept the merchandise and gave them the facts of the dispute up to that point.

On September 19th, 2008, Defendant responded to said telephone conversation with a written statement asking Plaintiff to provide written notice so as to satisfy statutory requirements for pursuit of a billing error claim.

On October 6th, 2008, Mr. Naef sent such a written notice to World's Foremost Bank notifying them that he did not accept the goods that were delivered to him by SEC. The notice was statutorily sufficient in all respects.

On November 11th, 2008, Defendant responded to Mr. Naef's written notice with an unfavorable determination of the billing error dispute and informed Mr. Naef that the account would not be credited. Specifically, Defendant cited the invoice signed by Mr. Naef which stated that the goods were provided at a discount, and that the contract was not rescindable without payment of a 20% restocking fee (approximately $830).

On November 21st, 2008, Mr. Naef wrote a letter to Defendant informing them of the fact that he disagreed with their decision and that they were obligated under the law to credit his account.

On January 21st, 2009, Defendant responded by stating that if a refund is to be given, that Mr. Naef must return the merchandise to the seller and provide proof as such.

On August 24th 2009, Mr. Naef, for good and valuable consideration, assigned his right to pursue a remedy under the statutes in question to Plaintiff Laurine Meinhardt. A written copy of said assignment is attached hereto as Exhibit "B." Plaintiff then brought this action to recover under the FCBA.

**ARGUMENT**

**I.   Standards for a Motion to Dismiss**

When evaluating a motion to dismiss, it is well-settled that courts consider the material allegations in the complaint to be true when evaluating whether to grant a motion to dismiss. Furthermore, the Court will also liberally construe the complaint in the Plaintiff's favor. *Rucci v. City of Pacific,* 327 F.3d. 651, 652 (8th Cir. 2003).   In order for a Motion to Dismiss to be granted, there can be no set of facts alleged by the Plaintiff, if taken as true, that would allow for a claim to be granted against the Defendant.  *Koehler v. Brody*, 483 F.3d 590, 596 (8th Cir. 2007).

**II. Plaintiff Did Allege A Violation of the Fair Credit Billing Act**

Defendant's Motion to Dismiss states that under any reading of the facts alleged by Plaintiff in this case, no violation of the FCBA occurred.  This is patently untrue.  First, while Defendant did comply with the relevant statutory provisions that require response within 30 days, and did not take any adverse action against Plaintiff's predecessor in interest, a violation did occur in that a billing error was present and Defendant failed to credit Plaintiff's predecessor in interest for the charges that were incurred.

The FCBA defines a "billing error" as:

> "a reflection on a statement of goods or services not accepted by the obligor or his designee...in accordance with the agreement made at the time of the transaction."

Plaintiff alleges in her Complaint that the goods at issue were not accepted by the obligor (Plaintiff's predecessor in interest") "in accordance with the agreement made at the time of the transaction" because Plaintiff did not accept the goods based on SEC's misrepresentation. Plaintiff's predecessor in interest, on numerous occasions, informed SEC that it did not accept

the goods, and SEC refused to pick them up. They are still available for pickup and have not been used to this day.

Because of the fact that a billing error *was* present, a proper reading of the statute requires that Defendant credit the account. Defendant refused to do so and, therefore, violated the statute. The FCBA states, in relevant part, that Defendant is required to:

> (i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any cage in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness;

> or

> (ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

A plain reading of the statute at first glance would indicate that Defendant had the option to do what is required by either complying with section (i) *or* section (ii), at Defendant's discretion. In statutory interpretation, it is well-settled law that if a plain reading of the statute will produce absurd or inconsistent results, then the court must look to legislative intent to determine the true meaning of the statute.  (*Owner-Operator Independent Drivers Ass'n, v. United Van Lines, LLC* 556 F.3d 690 C.A.8 (Mo.), 2009)

With this particular section of the FCBA, giving creditors *carte blanche* to choose either option would produce the absurd result of always allowing for a creditor to deny any claim of a billing error by any obligor.  The statute would lose all effectiveness whatsoever if this reading of the statute were used.

In order to make sue and sense of this statute in any sort of practical way, it must be read to *require* a crediting of the account if a billing error is actually present.  When read in this way, the statute was not complied with by Defendant, since they did not credit Plaintiff's predecessor in interest's account even though a billing error, as defined by statute, was present.

For these reasons, Defendant has failed to meet its burden to demonstrate that no reading of the material facts alleged by Plaintiff, when taken as true, have stated a claim upon which relief can be granted.

**III.  Was Plaintiff's Predecessor In Interest's Reliance on Wisconsin Statute in Plain Error?**

Plaintiff's predecessor in interest used Wisconsin consumer statutes when asserting his position.  The transaction took place in Wisconsin, the goods were exchanged in Wisconsin, and the alleged misrepresentations made by SEC occurred within the state of Wisconsin.  It was

therefore proper for Plaintiff's predecessor in interest, and by extension Plaintiff, to use Wisconsin statutes for guidance and proper legal analysis.

## CONCLUSION

When the Court reads Plaintiff's complaint and it's material factual allegations as true, a claim has been stated by Plaintiff upon which relief can be granted.  When a plain reading of the FCBA is applied an absurd result is produced, allowing for any creditor to deny any claim by any obligor at its discretion, as long as it provides an explanation in writing.  In order for this statute to have any purpose at all, it must be determined that the intent of the legislature was to require a credit when a billing error is present.  Here, a billing error was present, and Defendant failed to credit Plaintiff's predecessor in interest.  As a result, a violation of the FCBA has occurred, and Defendant's Motion to Dismiss should be denied.


Dated: _____
Nathan K. McLean, Esq.
Reg. No. 0389532
1158 Randolph Avenue
Saint Paul, MN 55105
(952) 657-8740

***Attorney for Plaintiff***